Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| | | |
|---|---|---|
| DIAMARIS TRINIDAD SOTO<br><br>RECURRENTE<br><br>v.<br><br>F40, LLC H-N-C AUDI DE SAN JUAN;<br>POPULAR AUTO, LLC<br>MAPFRE PRAICO INSURANCE COMPANY<br><br>RECURRIDOS | KLRA202500351 | *Revisión Judicial* procedente del Departamento De Asuntos Del Consumidor (DACO)<br><br>Querella Núm. San-2024-0017889<br><br>Sobre: Vehículo de motor |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez, Pagán Ocasio y el Juez Rodríguez Flores.

Pagán Ocasio, juez ponente

# SENTENCIA

En San Juan, Puerto Rico, a 18 de febrero de 2026.

## I.

El 11 de junio de 2025, la señora Diamaris Trinidad Soto (señora Trinidad Soto o recurrente) presentó un *Recurso de Revisión* en el que nos solicitó que revoquemos la *Resolución* emitida por el Departamento de Asuntos del Consumidor (DACO o foro recurrido), el 11 de abril de 2025, notificada, archivada en autos y remitida por correo el 15 de abril de 2025.[1] Mediante dicho dictamen, el DACO declaró No Ha Lugar la *Querella* radicada por la recurrente y ordenó su cierre y archivo.

El 13 de junio de 2025, emitimos una *Resolución* en la que le concedimos a la recurrente un término de tres (3) días para completar el Apéndice según los anejos enumerados en el Índice dado que el mismo carecía de los Anejos 24 al 32.

---

[1] Véase Apéndice del Recurso de Revisión Judicial, *Resolución,* págs. 16-25.

El 20 de junio de 2025, la recurrente presentó una *Moción en Cumplimiento de Orden* con la cual incluyó los referidos anejos.

En vista de que los errores señalados versan sobre la apreciación de la prueba por el ente administrativo, el 25 de junio de 2025, emitimos una *Resolución* en la que le concedimos a la recurrente hasta el 2 de julio de 2025 para informar si proponía a reproducir la prueba oral desfilada ante el DACO y el método de reproducción que utilizaría.

El 2 de julio de 2025, la recurrente presentó una *Moción en Cumplimiento de Orden* en la que informó que solicitaría la regrabación de los procedimientos ante el foro recurrido para presentar una transcripción de prueba oral (TPO) como método de reproducción de prueba.

El 9 de julio de 2025, emitimos una *Resolución* en la que le concedimos a la recurrente hasta el 22 de agosto de 2025 para presentar la TPO estipulada por las partes.

El 2 de agosto de 2025, la recurrente presentó una *Moción Informativa y en Solicitud de Término Adicional* para las partes revisar y estipular la TPO.

El 27 de agosto de 2025, emitimos una *Resolución* en la que le concedimos hasta el 15 de septiembre de 2025, como término final para presentar la TPO estipulada.

El 15 de septiembre de 2025, la recurrente presentó una *Moción en Cumplimiento de Orden* en la que informó que las partes estipulaban la TPO e incluyó la misma junto a la moción.

El 17 de septiembre de 2025, emitimos una *Resolución* en la que acogimos la TPO estipulada y le concedimos a la recurrente hasta el 17 de octubre de 2025 para presentar su alegato suplementario.

El 17 de octubre de 2025, la recurrente presentó un *Alegato Suplementario* en el que reiteró su solicitud para que revoquemos la *Resolución* recurrida.

El 21 de octubre de 2025, emitimos una *Resolución* en la que le concedimos a la parte recurrida hasta el 17 de noviembre de 2025 para presentar su alegato en oposición.

El 18 de noviembre de 2025, la parte recurrida presentó un *Alegato de la parte recurrida.*

Con el beneficio de la comparecencia de las partes, damos por perfeccionado el recurso. En adelante, pormenorizamos los hechos procesales pertinentes a la atención de la petición de revisión judicial.

## II.

El caso de marras tuvo su génesis el 20 de diciembre de 2023, cuando la señora Trinidad Soto presentó una *Querella* ante el DACO en contra de Gómez Hermanos Kennedy, LLC; Audi de San Juan; y Popular Auto (parte recurrida), con relación a unos alegados desperfectos mecánicos de un vehículo que adquirió mediante compraventa.[2] El 23 de octubre de 2024, enmendó la *Querella* para incluir a Mapfre Praico Insurance Company como querellado.[3] Posteriormente, el 12 de diciembre de 2024, enmendó la *Querella* para sustituir a Gómez Hermanos por F40, LLC, como representante y distribuidor autorizado de Audi.[4]

La recurrente señaló que adquirió un vehículo de motor nuevo marca Audi, modelo E-TRON, 2019, negro, tablilla núm. JLE432, número de serie WA1VABGE5KB009925, a un costo convenido de $85,440.00.[5] Según alegó, el 5 de febrero de 2022, mientras se encontraba estacionada, comenzó a llover y se percató que el agua

---

[2] Íd., Apéndice 30, *Querella*, págs. 246-263.
[3] Íd., Apéndice 20, *Enmienda a Querella*, págs. 122-127.
[4] Íd., Apéndice 18, *Enmienda a Querella*, págs. 106-112.
[5] Íd., Apéndice 41, *Contrato de Compraventa*, pág. 315.

de lluvia entraba por el techo de la unidad y por los pedales de freno, lo cual grabó en video. Ésta llevó el vehículo al concesionario de autos y allí le indicaron que era una goma defectuosa del *sunroof,* lo cual repararon. Posteriormente, el 3 de enero de 2023, el vehículo dejó de cargar y lo llevó en grúa al concesionario. En esa ocasión, le indicaron que tenía dos (2) módulos de la batería dañados y que las piezas tardaban en llegar.

El 29 de agosto de 2023, llevó nuevamente el vehículo en grúa al concesionario porque había dejado de cargar. El concesionario le indicó que unos ratones se comieron los cables de la unidad y que su arreglo correspondía al seguro. Aun cuando le hicieron dicha reparación, el vehículo no fue entregado en la fecha prevista porque la batería no cargaba, lo cual iban a reparar. Desde que la recurrente adquirió la unidad, la misma estuvo en el taller doscientos ocho (208) días, tiempo que ella no pudo hacer uso de su vehículo.

Tras varios trámites procesales, el 30 de septiembre de 2025, el DACO notificó el *Informe de Inspección* preparado por el técnico automotriz de la agencia, el señor José Torrón Martínez (señor Torrón Martínez o técnico).[6] La inspección se llevó a cabo el 23 de septiembre de 2024, en las facilidades de Audi San Juan. El vehículo llegó en grúa al lugar y el técnico solicitó hacerle una evaluación *Diagnostic Trouble Code* (D.T.C.) al vehículo, la cual mostró códigos relacionados a lo alegado en la *Querella.* En su opinión pericial, indicó que, tras la evaluación realizada, aparentaba que el vehículo sufrió un alto voltaje en el sistema de carga, posibles problemas con pilas caducadas en el *beeper* de radiofrecuencia manual y falta de comunicación en la batería del tren propulsor. Ante esa situación, concluyó que el vehículo requería un diagnóstico con el glosario de manufactura de Audi. Además, luego de una búsqueda en internet

---

[6] Íd., Apéndice 22, *Informe de Inspección,* págs. 142-153.

observó que al vehículo no se le habían realizado dos campañas de seguridad. Por lo cual, sugirió llevar a cabo una vista administrativa.

El 15 de octubre de 2024, la recurrente presentó una *Objeción al Informe de Inspección.*[7] Alegó que el informe técnico quedó inconcluso y que no hay una relación de la investigación del técnico con sus hallazgos. Adujo que el informe habla de campañas de seguridad pero que no establece cuál es la situación que creó dichas campañas y que tampoco especifica la situación con respecto al alto voltaje. Sostuvo que no se llega a un diagnóstico en el informe.

El 4 de diciembre de 2024, Mapfre presento una contestación a la querella enmendada, en la que negó las alegaciones en su contra y solicitó la desestimación.[8]

Asimismo, el 17 de diciembre de 2024, Audi de San Juan presentó una contestación a la querella enmendada.[9] Alegó que muchas de las reclamaciones fueron atendidas y reparadas bajo la garantía y que el vehículo no ha vuelto a reparación para esos asuntos. Adujo, además, que otras de las condiciones presentadas por el vehículo fueron causadas por intervención de ratones que afectaron la cablería del vehículo y no por los alegados desperfectos. Arguyó que, luego de la inspección del técnico del DACO, se indicó que el vehículo requiere de unas campañas de seguridad y de verificación de la batería pero que la recurrente no autorizó que el vehículo fuera llevado al taller de Audi San Juan para servicio.

El 11 de abril de 2025, notificada el 15 de abril de 2025, el DACO emitió una *Resolución* en la que declaró No Ha Lugar la *Querella enmendada* y ordenó su cierre y archivo.[10] La vista administrativa se celebró el 4 de abril de 2025, a la que

---

[7] Íd., Apéndice 21, *Objeción al Informe de Inspección,* págs. 128-141.
[8] Íd., Apéndice 19, *Contestación a Querella Enmendada,* págs. 117-121.
[9] Íd., Apéndice 16, *Moción asumiendo representación legal, Contestación a Querella y Querella Enmendada,* págs. 90-100.
[10] Íd., Apéndice 3, *Resolución,* págs. 16-25. Notificada, archivada en autos y remitida por correo el mismo día.

comparecieron tanto la recurrente como los recurridos. Ante la agencia, se desfiló como prueba documental los contratos de compraventa y de financiamiento, los documentos de la fianza, las hojas de servicio, los correos electrónicos entre la recurrente y Audi San Juan sobre las reparaciones que el concesionario le realizaba al vehículo, el informe de la inspección por el técnico automotriz de la agencia y una serie de videos del vehículo tomadas por la recurrente para ilustrar su reclamo, así como fotos tomadas durante la inspección de DACO. Conforme a la prueba testifical y documental admitida y al expediente administrativo, el DACO formuló las siguientes determinaciones de hechos:

1. La parte querellante se identifica como Diamaris Trinidad Soto en adelante denominada "la Querellante".

2. La parte querellada F40, LLC fue el vendedor del vehículo objeto de la querella, en adelante denominada "el Con[c]esionario" y es también el representante autorizado en Puerto Rico del fabricante del vehículo de motor objeto de la querella.

3. La parte coquerellada Popular Auto, Llc, en adelante denominada "el Banco", fue la institución financiera que otorgó el financiamiento para la compraventa del vehículo mediante un contrato de venta al por menor a plazos.

4. La parte coquerellada Mapfre Praico Insurance Co, es la compañía afianzadora del Concesionario, en adelante denominada la "Afianzadora".

5. El 8 de junio de 2020 la Querellante adquirió mediante compraventa al Concesionario un vehículo de motor eléctrico nuevo marca Audi Modelo E-Tron color negro del año 2019 tablilla JLE 432 número de serie WA1VABGE5KB009925.

6. El vehículo contaba con 23 millas corridas al momento de la compraventa.

7. El precio de compraventa de la unidad fue de $85,440.00, total que fue financiando mediante la firma de un contrato de venta al por menor a plazos a razón de 72 pagos, siendo el primer pago por la cantidad de $1,620.56 y 71 pagos por la cantidad de $1,180.56.

8. El 5 de febrero de 2022 el vehículo se encontraba estacionado frente al negocio de la Querellante y agua de lluvia se coló por el techo de éste, en específico por el área de

la lámpara del techo, por debajo del pedal de frenos y por debajo de la guantera. El auto fue recogido por personal del Con[c]esionario el lunes 7 de febrero de 2022 y fue reparado mediante ajuste en el "sunroof", verificación y limpieza de los drenajes de agua y cambio deflector. Al vehículo se le realizó además el mantenimiento de las 10,000 millas, revisión software MMI, verificación del conector indicador de carga, se llevó a cabo la inspección multipuntos, se aplicó etiqueta a la unidad de carga portátil, se ajustó nivel de carga, se actualizó "drivetrain software" y se revisó el "LED" por llamada de emergencia. El millaje del vehículo a esta fecha era 11,108 millas. El 11 de febrero de 2022 le notificaron a la querellante que su vehículo estaba listo y ésta lo recogió el 14 de febrero de 2022.

9. El 3 de enero de 2023 el vehículo cargaba poco, por lo que la Querellante lo llevó al Concesionario y te informaron que tenía dos módulos de la batería dañados y las piezas tardarían. A esta fecha el vehículo tenía 20,452 millas. La Querellante estuvo sin transportación hasta el 15 de febrero de 2023, fecha en la que le facilitaron un vehículo sustituto. El Concesionario reprogramó la batería, se le identificó variaciones en el voltaje a consecuencia de que el módulo #30 estaba fallando, se balancearon los módulos #28 y #29, se reemplazó el módulo #30 y se le recomendó a la querellante que solo lo cargara en un 80%, ya que si se carga siempre al 100% la batería dura menos. Al vehículo se le realizó además el mantenimiento de las 20,000 millas y reemplazo del fluido de frenos.

10. El 29 de agosto de 2023 el vehículo de la Querellante no cargaba y fue transportado en grúa a las facilidades del vendedor. El Vendedor encontró que ratones se había comido cables del vehículo y orientó a la Querellante para que se comunicara con su compañía aseguradora. La Querellante realizó gestiones con su aseguradora y luego de que ésta inspeccionara el vehículo, autorizó la reparación a un costo de $5,147,08 de los cuales la Querellante pagó $2,000.00 y el restante fue cubierto por la aseguradora. Concesionario lavó el motor del vehículo y reemplazó cables, pero presentó problema de carga relacionado con varios módulos de la batería que estaban defectuosos, por lo que solicitó las piezas al manufacturero. Cuando llegaron las piezas el Concesionario procedió a reemplazar los módulos #31 y #35 y a balancear los módulos #34 y #36. El vehículo le fue

devuelto a la Querellante el 31 de enero de 2024 y durante este tiempo se le proveyó un auto sustituto.

11. El 21 de diciembre de 2023 la Querellante radicó, a través de su representación legal, la querella y solicitó que se decretase la nulidad o resolución del contrato de compraventa y-o contrato al por menor a plazos, ordenando de forma solidaria a los querellados que le reembolsasen la totalidad de las prestaciones, una compensación por daños y perjuicios por la cantidad de $5,000.00 y el pago de honorarios de abogado por la cantidad de $3,500.00, así como cualquier otro remedio que en derecho procediese.

12. El 23 de septiembre de 2024 el vehículo fue objeto de inspección por el Técnico del DACO, Sr. José Torrón, que rindió Informe que fue notificado a las partes el 30 de septiembre de 2024. En la inspección se realizó un D.T.C. ("Diagnostic Trouble Code") o lectura de data de la computadora y el inspector concluyó que el vehículo aparenta haber sufrido un alto voltaje en el sistema de carga, problemas con pilas caducadas en el "beeper" de radio frecuencia y aparente falta de comunicación en la batería del tren propulsor. El Inspector indicó además que el vehículo requería que se le realizaran unas tablas de diagnóstico del glosario del manufacturero y que le faltaban dos compañas por hacer relacionadas con calentamiento de la batería que podría ocasionar humo o fuego. El millaje del vehículo al momento de la inspección era de 25,275 millas.

13. Al momento de la inspección el Concesionario le solicitó a la Querellante que dejase el vehículo en sus facilidades para proceder a realizarle diagnóstico y servicio en garantía y ésta se negó.

14. La garantía de las baterías del vehículo de la Querellante son de cuatro años o 50,000 millas en la batería de accesorios y ocho años o 100,00 millas en la batería de litio, siempre y cuando recorra 500 millas al mes.

En consideración a lo anterior, el DACO determinó que no se le brindó oportunidad razonable al concesionario para que corrigiera el defecto. Señaló que, durante la inspección citada por dicha agencia, la recurrente no permitió que el vehículo permaneciera en las facilidades del concesionario para que éste le realizara un diagnóstico. Por esa razón, durante la inspección, no se pudo determinar la razón de la falla o defecto del vehículo y, si el mismo

estaba relacionado con problemas de carga o batería. Además, aludió a que la recurrente no presentó prueba pericial que acreditara que el vehículo presenta nuevamente defectos relacionados con la batería, aunque el técnico del DACO concluyó que el defecto estaba relacionado con alto voltaje o problemas de falta de comunicación entre la batería y el tren propulsor. El foro recurrido no pudo concluir que el vendedor o fabricante no quiso o no pudo reparar el vehículo debido a que la recurrente no permitió su diagnóstico y reparación. Por lo que concluyó que no se le ha brindado la oportunidad al concesionario, representante de fábrica del vehículo, para que corrija el defecto.

En adelante, pormenorizamos las porciones de la TPO atientes a los errores señalados por la recurrente.

### Testimonio de la señora Trinidad Soto

La señora Trinidad Soto declaró que radicó una querella ante el DACO porque el vehículo que adquirió mediante compraventa en el concesionario Audi de San Juan estaba teniendo problemas.[11] Testificó que, con una lluvia fuerte, comenzó a caer agua a través del *sunroof* que le inundó el panel eléctrico del vehículo y comenzó a caer agua por detrás del *dash* y a salir por los pedales del freno y por el pedal de gasolina.[12] Llevó el vehículo al concesionario y allí le dijeron que se trataba de una goma de *sunroof*.[13] Sin embargo, testificó que luego, en enero del 2023, el vehículo dejó de cargar y volvió a llevarlo al concesionario, en donde le indicaron que la batería no estaba funcionado por lo que tenían que ordenarlas para llevar a cabo la reparación.[14] Sobre esa reclamación, le indicaron que eran dos (2) módulos de la batería pero que repararon uno (1).[15]

---

[11] *Transcripción de la vista administrativa del 4 de abril de 2025*, pág. 5, líneas 1-18.
[12] Íd., líneas 18-24.
[13] Íd., pág. 6, líneas 6-22.
[14] Íd., pág. 21, líneas 11-25 a la pág. 22, líneas 1-2.
[15] Íd., pág. 24, líneas 1-17.

Esta se llevó el vehículo en marzo y en agosto dejó de cargar otra vez.[16] Cuando la llevó a garantía, le indicaron que la situación fue que un ratón se había comido un cable, lo cual no estaba cubierto para garantía y que ésta pagó.[17]

Declaró que, en enero de 2024, fue a recoger su vehículo y para agosto aproximadamente volvió a dejar de cargar.[18] En ese momento, decidió no volver a llevar al vehículo al concesionario.[19] A preguntas del contrainterrogatorio, respondió que, más allá de la inspección de la agencia, no ha llevado el vehículo al taller del concesionario para que lo verifiquen.[20]

### Testimonio del técnico José Torrón Martínez

El señor Torrón Martínez, técnico del DACO, declaró que solicitó una evaluación *D.T.C* del sistema electrónico del auto en el cual surgió que tenía un alto voltaje en la batería.[21] Junto al informe, el técnico acompaño la evaluación que se realizó el día de la inspección.[22] Esa fue una única prueba que se le realizó al vehículo.[23] Expresó que, durante la inspección, el vehículo no encendió.[24]

A preguntas del contrainterrogatorio, respondió que, el alto voltaje estaba relacionado a que no había comunicación con la batería.[25] Respondió que no hizo nada más con el vehículo a parte de conectarlo al "scanner".[26] El técnico solicitó al concesionario la lectura del reporte y basado en el mismo, realizó su informe.[27] Declaró que según el diagnostico, no había comunicación entre la

---

[16] Íd., pág. 25, líneas 11-16.
[17] Íd., pág. 32, líneas 18-25 a la pág. 33, líneas 1-2.
[18] Íd., pág. 38, líneas 2-14.
[19] Íd., líneas 16-25.
[20] Íd., pág. 62, líneas 11-17
[21] Íd., pág. 69, líneas 1-12.
[22] Íd., líneas 13-20.
[23] Íd., pág. 70, líneas 2-5.
[24] Íd., pág. 72, líneas 2-5.
[25] Íd., pág. 75, líneas 13-25; pág. 78, líneas 10-23.
[26] Íd., pág. 77, líneas 9-14.
[27] Íd., pág. 76, líneas 16-19.

batería y el "networking" pero tenía que volverlo a diagnosticar para saber el costo de una reparación.[28]

**Testimonio del señor Luis Garced Beregnes**

El señor Garced Beregnes declaró que era el Gerente de Servicios del concesionario Audi de San Juan y que vio la documentación de reparación del vehículo objeto de la querella.[29] Respecto a la visita del vehículo al concesionario el 7 de febrero de 2022, se le cambió el deflector del *sunroof* al vehículo.[30] Declaró que el vehículo no volvió al taller para atender los motivos que dieron la primera visita.[31] El 3 de enero de 2023, se le realizó al vehículo una reprogramación y el mismo salió del taller en marzo de 2023.[32] Declaró que le informaron a la recurrente que debía cargar el vehículo al ochenta por ciento (80%) de la batería.[33]

El señor Garced Beregnes expresó que estuvo presente durante la inspección del técnico del DACO, en la que le realizaron una lectura de la data de la computadora que identifica códigos de trabajo.[34] Declaró que, para diagnosticar el vehículo, la recurrente debía dejar el vehículo, pero ésta le dejó saber que no le interesaba dejarlo.[35]  Al vehículo no se le hizo un diagnóstico, sino una extracción de data.[36] Expresó que, luego de la inspección por el técnico del DACO, el vehículo no ha vuelto al taller para algún diagnostico o servicio.[37]

A preguntas del contrainterrogatorio, respondió que no participó físicamente de ninguna de las reparaciones, sino que vio

---

[28] Íd., pág. 80, líneas 11-22.
[29] Íd., pág. 96, líneas 3-22.
[30] Íd., pág. 97, líneas 9-25 a la pág. 98, líneas 1-21.
[31] Íd., pág. 99, líneas 20-24.
[32] Íd., pág. 102, líneas 1-25 a la pág. 103, líneas 1-4.
[33] Íd., pág. 106, líneas 12-25.
[34] Íd., pág. 122 líneas 10-13.
[35] Íd., pág. 122, líneas 22-25 a pág. 123, líneas 1-3.
[36] Íd., pág. 130, líneas 17-19.
[37] Íd., líneas 20-25 a la pág. 131, línea 1.

los documentos del vehículo.[38] Respondió que los hallazgos sobre los cables corroídos no los hizo él sino el técnico.[39]

Oportunamente, el 29 de abril de 2025, la recurrente presentó una *Moción de Reconsideración* ante el DACO.[40] En esencia, adujo que la determinación incurre en errores de hecho y de derecho que justifican su revocación conforme a la evidencia presentada.

El 13 de mayo de 2025, el DACO emitió una *Resolución* en la que declaró No Ha Lugar la solicitud de reconsideración presentada por la recurrente.[41]

Inconforme, el 11 de junio de 2025, la recurrente presentó el recurso de revisión judicial de epígrafe en el que formuló los siguientes señalamientos de error:

> **PRIMER ERROR: ERRÓ EL DACO AL OMITIR O MINIMIZAR HECHOS PROBADOS SOBRE LA NATURALEZA Y RECURRENCIA DEL DEFECTO DEL AUDI E-TRON.**
>
> **SEGUNDO ERROR: ERRÓ EL DACO AL EMITIR UNA RESOLUCIÓN CONTRADICTORIA AL DECLARAR QUE EL VEHÍCULO FUE REPARADO "A SATISFACCIÓN" MIENTRAS RECONOCE LA RECURRENCIA DEL DEFECTO.**
>
> **TERCER ERROR: ERRÓ EL DACO AL CALIFICAR COMO UN "DETALLE MENOR" UN DEFECTO QUE AFECTABA SUSTANCIALMENTE EL USO Y SEGURIDAD DEL VEHÍCULO.**
>
> **CUARTO ERROR: ERRÓ EL DACO AL INTERPRETAR INCORRECTAMENTE LAS NORMAS LEGALES PERTINENTES CON RESPECTO A LOS HECHOS.**

Alegó que la *Resolución* recurrida incurre en un error manifiesto al omitir o minimizar hechos debidamente probados y que reflejan la naturaleza sustancial, persistente y peligrosa del defecto que afecta

---

[38] Íd., pág. 134, líneas 7-18.
[39] Íd., pág. 145, líneas 12-16.
[40] Véase Apéndice 2 del *Recurso de Revisión*, págs. 5-15.
[41] Íd., Apéndice 1, págs. 1-4. Notificada, archivada en autos y remitida por correo el mismo día.

al vehículo. Adujo que la *Resolución* no hace referencia al informe del inspector ni explica por qué no se le otorgó valor probatorio. Asimismo, expresó que la determinación afirma que el vehículo fue debidamente reparado, sin embargo, la misma reconoce que el defecto reapareció. Por ello, sostuvo que el foro recurrido no hizo una evaluación coherente de la prueba ante sí ni explico de manera clara como alcanzó su conclusión.

Por su parte, arguyó que el defecto relacionado al sistema eléctrico y de carga del vehículo es un defecto sustancial probado que afecta la funcionalidad esencial del vehículo. Expuso que, luego de varias intervenciones, el defecto persistió o volvió a manifestarse, evidenciando que el concesionario no pudo corregirlo dentro de un tiempo y número de intentos razonables. Así, alegó que cumplió con demostrar que recibió un vehículo en aparente buen estado y que pronto descubrió un vicio grave que ni el concesionario ni fabricante pudieron remediar efectivamente, dentro de un término razonable. Por ello, adujo que el DACO erró al no concederle el remedio de la resolución del contrato.

El 17 de octubre de 2025, la recurrente presentó un *Alegato Suplementario* en el que reafirmó que los hechos de este caso facultan al DACO a decretar la resolución del contrato de compraventa.

El 18 de noviembre de 2025, la parte recurrida presentó un *Alegato de la parte recurrida.* En síntesis, alegó que surgen de la *Resolución* recurrida determinaciones específicas y articuladas, tanto de hecho como de derecho. A su juicio, el DACO cumplió con su mandato de exponer el nexo lógico-jurídico entre los hechos probados y la norma aplicable. Adujo, además, que la determinación de la agencia identifica la prueba testifical y documental y la relaciona con los conceptos legales pertinentes.

Por su parte, arguyó que no se le ha provisto oportunidad razonable al concesionario y/o fabricante para reparar el vehículo, dentro del periodo de garantía vigente, por razones atribuibles a la propia recurrente, quien se negó a conceder dicha oportunidad. Sostuvo que la recurrente falló en su obligación de probar su caso a satisfacción del juzgador. Manifestó que ésta no logró demostrar que el vehículo adolecía de un defecto que el concesionario no pudo o no quiso a tender a tenor con la garantía, de habérsele provisto la oportunidad de así hacerlo. Expresó, también, que la recurrente no presentó prueba de que alguno de los defectos alegados haya sido redhibitorio.

En adelante, pormenorizaremos el derecho aplicable al presente recurso.

**III.**

**A.**

La *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico*, Ley Núm. 38 de 2017, según enmendada, 3 LPRA secs. 9601 *et seq.*, (LPAU) establece el alcance de la revisión judicial de las determinaciones de las agencias administrativas. La LPAU dispone que una parte adversamente afectada por una orden o resolución de una agencia puede acudir en *Revisión Judicial* al tribunal siempre y cuando haya agotado los remedios administrativos. ***Edward Simpson v. Consejo de Titulares y Junta de Directores del Condominio Coral Beach***, 214 DPR 370, 378 (2024). Específicamente, la Sección 4.2 de la LPAU, *supra*, sec. 9672, dispone que una parte adversamente afectada por una orden o resolución final de una agencia podrá presentar una solicitud de revisión ante el Tribunal de Apelaciones, en un término de treinta (30) días contados a partir de la fecha del archivo en autos de copia de la notificación de la orden o resolución final de la agencia o a partir de la fecha aplicable de las dispuestas en la Sección 3.15 de

dicha ley (3 LPRA sec. 9655), cuando el término para solicitar la revisión judicial haya sido interrumpido mediante la presentación oportuna de una moción de reconsideración.

A tenor de esta Ley y la jurisprudencia aplicable, la revisión judicial consiste, esencialmente, en determinar si la actuación de la agencia se dio dentro de las facultades que le fueron conferidas por ley, si es compatible con la política pública que la origina y si es legal y razonable. ***Capó Cruz v. Junta de Planificación***, 204 DPR 581, 590-591 (2020); ***Rolón Martínez v. Supte. Policía***, 201 DPR 26, 35 (2018).

Así pues, la revisión judicial de una decisión administrativa se circunscribe a analizar lo siguiente: (1) si el remedio concedido por la agencia fue el apropiado; (2) si las determinaciones de hecho realizadas por la agencia estuvieron sustentadas por prueba sustancial que surgió del expediente administrativo, y (3) si, mediante una revisión completa y absoluta, las conclusiones de derecho fueron correctas. ***Otero Rivera v. Bella Retail Group, Inc.***, 214 DPR 473, 484-485 (2024); ***Rolón Martínez v. Supte. Policía***, supra, pág. 35-36.

Al momento de revisar una decisión administrativa, el criterio rector para los tribunales será la <u>razonabilidad</u> en la actuación de la agencia. ***Rebollo v. Yiyi Motors,*** 161 DPR 69, 76 (2004). Cónsono con ello, será necesario determinar si la agencia actuó de forma arbitraria, ilegal o de manera tan irrazonable que su actuación constituyó un abuso de discreción. ***Rolón Martínez v. Supte Policía,*** supra; ***Rebollo v. Yiyi Motors,*** supra.

Por otro lado, la sección 4.5 de la LPAU dispone que, las determinaciones de hechos de las decisiones de las agencias se mantendrán por el tribunal de basarse en evidencia sustancial que surja del expediente administrativo. LPAU, *supra*, sec. 9675. Es

menester señalar que, las conclusiones de derecho serán revisables en todos sus aspectos por el tribunal. LPAU, *supra,* sec. 9675.

Ahora bien, cuando se trate de conclusiones de derecho que no envuelvan interpretaciones dentro del área de especialización de la agencia, éstas se revisarán por los tribunales sin circunscribirse al razonamiento que haya hecho la agencia. ***Capó Cruz v. Jta de Planificación et al.,*** supra; ***Pacheco v. Estancias,*** 160 DPR 409, 432 (2003); ***Rivera v. A & C Development Corp.,*** 144 DPR 450, 461 (1997).

Es norma reiterada de derecho que los foros revisores le concederán gran deferencia y consideración a las decisiones de las agencias administrativas, debido a la vasta experiencia y el conocimiento especializado sobre los asuntos que le fueron delegados. ***Graciani Rodríguez v. Garaje Isla Verde,*** 202 DPR 117, 126 (2019); ***Rolón Martínez v. Supte. Policía,*** supra.

Sin embargo, recientemente, el Tribunal Supremo, en ***Vázquez v. Consejo de Titulares***, 216 DPR ___ (2025), 2025 TSPR 56 (resuelto el 21 de mayo de 2025), haciendo eco de lo resuelto en ***Loper Bright Enterprises v. Raimondo***, 603 U.S. 369 (2024), dictaminó que la interpretación de la ley es una tarea que corresponde inherentemente a los tribunales. De esa manera, enfatizó la necesidad de que los foros judiciales, en el ejercicio de su función revisora, actúen con el rigor que prescribe la LPAU, supra. ***Vázquez v. Consejo de Titulares***, supra. Por ello, se pautó que será deber de los tribunales revisar las conclusiones de derecho en todos sus aspectos, por los mecanismos interpretativos propios del Poder Judicial y no guiados por la deferencia automática. ***Vázquez v. Consejo de Titulares***, supra.

Por las razones antes aludidas, las decisiones de las agencias administrativas gozan de una presunción de regularidad y corrección. ***Capó Cruz v. Jta de Planificación et al.,*** supra, pág.

591; ***Rolón Martínez v. Supte. Policía,*** supra; ***García Reyes v. Cruz Auto Corp.,*** 173 DPR 870 (2008). La presunción de corrección que acarrea una decisión administrativa deberá sostenerse por los tribunales a menos que la misma logre ser derrotada mediante la identificación de evidencia en contrario que obre en el expediente administrativo. ***Misión Ind. P.R. v. J.P.,*** 146 DPR 64, 130 (1998).

La deferencia concedida a las agencias administrativas únicamente cederá cuando: (1) la determinación administrativa no esté basada en evidencia sustancial; (2) el organismo administrativo haya errado en la aplicación o interpretación de las leyes o los reglamentos que se le ha encomendado administrar; (3) cuando el organismo administrativo actúe arbitraria, irrazonable o ilegalmente, al realizar determinaciones carentes de una base racional; o, (4) cuando la actuación administrativa lesione derechos constitucionales fundamentales. ***Super Asphalt v. AFI y otros,*** 206 DPR 803, 819 (2021); ***Torres Rivera v. Policía de Puerto Rico,*** 196 DPR 606, 628 (2016).

Dichos procedimientos se distinguen del proceso judicial ordinario al promover la flexibilidad y proveer un mecanismo más económico para que la ciudadanía reclame sus derechos. ***Acarón et al. v. D.R.N.A.,*** 186 DPR 564, 583 (2012). No obstante, la flexibilidad e informalidad del proceso administrativo, es menester que los mismos cumplan con "las garantías mínimas que exige el debido proceso de ley, ya que las decisiones administrativas tienen el alcance de afectar los intereses propietarios o libertarios de las personas". *Íd.*

**B.**

En nuestro ordenamiento jurídico, se le confiere al comprador el derecho a la acción de saneamiento por vicios ocultos y a la acción redhibitoria. ***Pérez v. VPH Motor Corp.,*** 152 DPR 475, 488 (2000);

Artículo 1261 del Código Civil, 31 LPRA sec. 9851. El saneamiento por vicios ocultos contempla situaciones en las que posterior a la entrega se evidencian en la cosa defectos intrínsecos que exceden las imperfecciones menores que cabe esperar normalmente en un producto determinado. *Polanco v. Cacique Motors*, 165 DPR 156, 166 (2005).

A estos efectos, el vendedor estará obligado al saneamiento por los defectos ocultos que tuviera la cosa vendida, si la hacen impropia para el uso a que se la destina o si disminuyen de tal modo el uso que, de haberlo conocido el comprador, no la habría adquirido o habría dado un precio inferior por ella. Artículo 1267 del Código Civil, *supra*, sec. 9871. En cambio, no es un vicio redhibitorio aquel que conoce el adquirente al momento de la transmisión o el que pudo haber conocido conforme a sus aptitudes. Artículo 1268 del Código Civil, *supra*, sec. 9872.

Ante esto, el adquirente tiene la opción de reclamar la subsanación o reparación de los defectos; la entrega de un bien equivalente o resolver total o parcialmente el contrato. Artículo 1263 del Código Civil, supra, sec. 9853. Para la resolución total, esta solo procede si la evicción o el defecto recae sobre un aspecto determinante para la adquisición del bien. Íd.

Se ha establecido que la magnitud del defecto que da lugar a una acción redhibitoria no requiere que este imposibilite el uso de la cosa, sino que basta con que merme notablemente su valor. *García Reyes v. Cruz Auto Corp*, supra, pág. 891; *Polanco v. Cacique Motors*, supra, pág. 167. Además, un vicio oculto no es una cualidad en el sentido literal, sino que este será oculto para el comprador, atendiendo sus características individuales. *Polanco v. Cacique Motors*, supra, pág. 167.

De este modo, para que proceda una acción de saneamiento por vicios ocultos se tiene que cumplir con los siguientes requisitos:

(1) los vicios no deben ser conocidos por el adquirente; (2) el defecto debe ser grave o suficientemente importante para que la cosa se torne impropia para el uso que se le destina o que disminuya de tal modo el uso, que de haberlo conocido el comprador, no la habría comprado o habría dado menos precio por ella; (3) que sea preexistente a la venta; y (4) que se ejercite la acción en el plazo legal, que es de 6 meses contados desde la entrega de la cosa vendida. ***García Reyes v. Cruz Auto Corp.****,* supra, págs. 890-891. Además, en el caso de vicio redhibitorio, el adquirente solo tiene derecho al resarcimiento de los daños sufridos si el transmitente actuó con dolo. Artículo 1263 del Código Civil, *supra,* sec. 9853.

**C.**

La Ley Núm. 7 del 24 de septiembre de 1979, 10 LPRA sec. 2051, *et seq.* (Ley Núm. 7), conocida como "Ley de Garantías de Vehículos de Motor" fue creada con el propósito de "velar porque los intereses de los consumidores sean salvaguardados frente a los intereses del manufacturero y el distribuidor o vendedor".

Por virtud de dicha Ley, el Reglamento Núm. 7159 del 1 de junio de 2006, según enmendado, conocido como el "Reglamento de Garantías de Vehículos de Motor" (en adelante, el "Reglamento Núm. 7159"), fue promulgado con el objetivo de "proteger adecuadamente a los consumidores y sus inversiones en la adquisición de vehículos de motor". A su vez, procura que todo vehículo de motor comprado en Puerto Rico sirva para los propósitos por el cual fue adquirido y reúna las condiciones mínimas necesarias para proteger la vida del consumidor y su propiedad.

En lo pertinente, la Regla 21 del Reglamento Núm. 7159, *supra,* establece que el vehículo será recibido para reparación cuando el consumidor lo solicite si el mismo presenta riesgos potenciales a la seguridad de los ocupantes del vehículo. El servicio

deberá ser provisto dentro de un término razonable que no excederá de seis días laborables a partir de que se solicite. Íd.

La Regla 22 del Reglamento Núm. 7159, *supra*, le confiere al DACo la potestad de decretar la resolución del contrato o reducir proporcionalmente el precio de venta, de conformidad con las disposiciones del Código Civil de Puerto Rico "en aquellos casos en que el vendedor, distribuidor autorizado o concesionario, distribuidor de fábrica o fabricante, dentro de los términos de la garantía de fábrica, tuvo oportunidad razonable para reparar uno o más defectos, pero no quiso o no pudo corregirlos". Lo que constituye "oportunidad razonable" se determinará tomando en consideración las circunstancias particulares de cada caso. Íd.

Además, la Regla 37 del referido reglamento establece que nada de lo dispuesto en él limita el derecho del consumidor a ejercer cualquier acción que le reconozcan las leyes del Estado Libre Asociado de Puerto Rico, así como las acciones de saneamiento por evicción o vicios ocultos, y la acción redhibitoria que reconoce el Código Civil de Puerto Rico, *supra*, para los contratos de compraventa. ***Polanco v. Cacique Motors***, supra, pág. 165.

**IV.**

La recurrente nos solicita que revoquemos la *Resolución* del DACO que declaró No Ha Lugar la *Querella,* tras aquilata la prueba testifical y documental desfilada ante sí. Por estar relacionados entre sí, los errores señalados se atenderán en conjunto.

En resumen, alegó que el DACO erró al minimizar un defecto grave y sustancial que comprometía la utilidad y seguridad del vehículo vendido. Adujo que el informe del inspector de la agencia constató la presencia de fallas eléctricas graves y "recalls" pendientes que ponían en riesgo la seguridad del consumidor y que el DACO no hizo referencia a dicho informe ni explicó por qué no se le otorgó valor probatorio. Manifestó, que el defecto eléctrico

recurrente constituye el tipo de vicio que justifica la resolución del contrato.

Por esto, arguyó que el DACO incurrió en un error de hecho y de derecho al caracterizar el defecto denunciado por la recurrente como un detalle menor o como una condición dentro de los parámetros normales, apreciación que, según alegó, contradice la evidencia documental y pericial contenida en el récord administrativo. Además, sostuvo que, el DACO pasó por alto el mandato de la Regla 22 del Reglamento Núm. 7159, *supra*, la cual prevé que, si dentro de un término razonable de garantía el defecto persiste a pesar de reparaciones, el consumidor tiene derecho a solicitar la resolución del contrato.

En cambio, la parte recurrida arguyó que no se le ha provisto oportunidad razonable al concesionario para reparar el vehículo, a pesar de que está en disposición de así hacerlo, por razones atribuibles a la recurrente. Así, sostuvo que la recurrente falló en su obligación de probar el caso y que no logró demostrar que el vehículo adolecía de un defecto que el concesionario no pudo o no quiso atender, a tenor con la garantía del vehículo, de habérsele dado la oportunidad para hacerlo. Arguyó, también, que no se presentó prueba de que alguno de los defectos alegados haya sido redhibitorio.

Sabido es que las determinaciones de hecho que realizan las agencias merecen la mayor deferencia. Ello, obedece a que las agencias administrativas tienen la pericia y el conocimiento experto en la materia que le fue delegada. Empero, estamos autorizados a intervenir en las determinaciones de las agencias administrativas de no estar basadas en evidencia sustancial que obre en el expediente. En cuanto a las conclusiones, estas serán revisadas en todos sus aspectos.

Según la norma jurídica pormenorizada precedentemente, debemos revisar si: (1) el remedio concedido por el DACO fue apropiado; (2) la decisión está sostenida en evidencia sustancial que obra en el expediente administrativo visto en su totalidad; y (3) si las conclusiones de derecho fueron correctas.

Según surge del expediente, en este caso, el DACO citó a las partes para la inspección del vehículo. Al mismo se le realizó una extracción de data de la prueba D.T.C. por el técnico del DACO. En su opinión, el vehículo requería un diagnóstico del manufacturero. Empero, ese día la recurrente <u>no</u> accedió a dejar el vehículo en el concesionario para llevarle a cabo dicho diagnóstico y el servicio en garantía. Por ello, éste recomendó la celebración de una vista administrativa, la cual fue celebrada el 4 de abril de 2025. Consecuentemente, el DACO resolvió que, al momento de la inspección, la recurrente impidió que el concesionario evaluara y reparara el desperfecto del vehículo señalado en la querella por lo que desestimó la misma. Así que, el DACO no tenía ante sí, mediante el informe de inspección, un diagnóstico para determinar si en efecto el vehículo adolecía de los alegados defectos, por razones atribuibles a la recurrente. Pues la data que extrajo el técnico no era suficiente, aun cuando señaló que el vehículo aparentó tener falta de comunicación con la batería.

La *Resolución* recurrida alude a las incidencias de reparación del vehículo objeto de la querella en el concesionario Audi. Ahora bien, el foro recurrido determinó que, sin duda, el vehículo fue reparado con relación a la batería en dos ocasiones previas; en la tercera ocasión, la reparación no se pudo concluir debido a que la recurrida no quiso o no lo pudo reparar. Esto, porque la recurrente no lo permitió. Además, determinó que, por lo ocurrido con los ratones que se comieron los cables, en ausencia de prueba pericial, no podía concluir que el defecto de carga de batería era

necesariamente un defecto de la batería o el vehículo *per se* y, no que era atribuible a factores externos que no pueden ser honrados por la garantía. La recurrente no presentó prueba pericial para poder demostrar dicho asunto.

Tras un análisis objetivo, sereno y cuidadoso del expediente y de la TPO, en correcta práctica adjudicativa apelativa, y a la luz de los criterios esbozados en la LPAU y la jurisprudencia aplicable, determinamos que corresponde confirmar la *Resolución* recurrida. El DACO actuó correctamente en derecho al declarar No Ha Lugar la *Querella* dado que la recurrente no permitió el diagnóstico para que el concesionario llevara a cabo las reparaciones mediante el servicio en garantía. Por tanto, no tenía derecho a la concesión del remedio solicitado.

Conforme a la Regla 22 del Reglamento Núm. 7159, *supra*, el DACO podrá decretar la resolución de un contrato en aquellos casos en que el vendedor o representante tuvo una oportunidad razonable para reparar defectos, pero no quiso o no pudo corregirlos. Qué constituye "oportunidad razonable" no está claramente defino en términos de tiempo u ocasiones, sino que dependerá de las circunstancias particulares de cada caso.

En el presente caso, no existe evidencia alguna que demuestre que el concesionario se haya negado a recibir el vehículo de la recurrente para inspeccionar y llevarle a cabo las reparaciones que sean necesarias, dentro de lo que cubre su garantía. Según se puede apreciar del expediente y de la TPO, en todo momento, la parte recurrida actuó conforme a sus deberes y brindó el servicio necesario, en un tiempo razonable, para corregir los defectos que el vehículo pudiera presentar.

Según la recurrente, el DACO incurrió en error al afirmar que el vehículo fue debidamente reparado. Sin embargo, de un análisis de la determinación recurrida, está establece que las primeras

ocasiones en que el concesionario evaluó el vehículo, reparó los defectos. Surge del expediente que, en dichas ocasiones anteriores, el concesionario llevó a cabo las reparaciones concernientes de la batería del vehículo. Ahora bien, en la última ocasión en que el vehículo alegadamente dejó de cargar, la recurrente <u>no</u> permitió el diagnóstico y la reparación por parte del concesionario. Tampoco la recurrente presentó prueba pericial alguna para demostrar que el vehículo presentaba problemas relacionados a la batería.

Así que, este Tribunal concluye que la señora Trinidad Soto no demostró que las determinaciones de hecho y conclusiones de derecho de DACO no estaban basadas en la totalidad del expediente administrativo. Por lo que, en virtud de todo lo anterior, corresponde confirmar la *Resolución* recurrida, toda vez que la decisión está sostenida en evidencia sustancial que obra en el expediente administrativo.

**V.**

Por los fundamentos antes expuestos, confirmamos la *Resolución* recurrida.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones